UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------

JACOB WHEELER,

               Plaintiff,

       v.

KADMON HOLDINGS, INC., HARLAN W.
WAKSAL, TASOS G. KONIDARIS,
EUGENE BAUER, CYNTHIA SCHWALM,
DAVID E. COHEN, NANCY MILLER-RICH,
and ARTHUR KIRSCH,

               Defendants.

---------------------------------------------------------------

Case No. _____

**COMPLAINT FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS**

JURY TRIAL DEMANDED

     Plaintiff Jacob Wheeler ("Plaintiff"), by and through his undersigned counsel, for his complaint against defendants, alleges upon personal knowledge with respect to himself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

**NATURE AND SUMMARY OF THE ACTION**

     1.    This action is brought by Plaintiff against Kadmon Holdings, Inc. ("Kadmon" or the "Company") and the members of Kadmon's Board of Directors (the "Board" or the "Individual Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), and U.S. Securities and Exchange Commission ("SEC") Rule 14a-9, 17 C.F.R. § 240.14a-9, and to enjoin the vote on a proposed transaction, pursuant to which Kadmon will be acquired by Sanofi ("Sanofi") through Sanofi's subsidiary Latour Merger Sub, Inc. ("Merger Sub") (the "Proposed Transaction").

2.     On September 8, 2021, Kadmon and Sanofi issued a joint press release announcing that they had entered into an Agreement and Plan of Merger dated September 7, 2021 (the "Merger Agreement").  Under the terms of the Merger Agreement, each Kadmon shareholder will receive $9.50 in cash for each Kadmon share they own (the "Merger Consideration").  The Proposed Transaction is valued at approximately $1.9 billion.

3.     On October 4, 2021, Kadmon filed a Schedule 14A Definitive Proxy Statement (the "Proxy Statement") with the SEC.  The Proxy Statement, which recommends that Kadmon stockholders vote in favor of the Proposed Transaction, omits or misrepresents material information concerning, among other things: (i) the data and inputs underlying the financial valuation analyses that support the fairness opinions provided by Cantor Fitzgerald & Co. ("Cantor") and Moelis & Company LLC ("Moelis"); and (ii) Company insiders' potential conflicts of interest.  The failure to adequately disclose such material information constitutes a violation of Sections 14(a) and 20(a) of the Exchange Act as Kadmon stockholders need such information in order to make a fully informed decision whether to vote in favor of the Proposed Transaction or seek appraisal.

4.     In short, unless remedied, Kadmon's public stockholders will be forced to make a voting or appraisal decision on the Proposed Transaction without full disclosure of all material information concerning the Proposed Transaction being provided to them.  Plaintiff seeks to enjoin the stockholder vote on the Proposed Transaction unless and until such Exchange Act violations are cured.

**JURISDICTION AND VENUE**

5.     This Court has jurisdiction over the claims asserted herein for violations of Sections 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder pursuant to

Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. § 1331 (federal question jurisdiction).

6.      This Court has jurisdiction over the defendants because each defendant is either a corporation that conducts business in and maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7.      Venue is proper in this District pursuant to 28 U.S.C. § 1391 because defendants are found or are inhabitants or transact business in this District.  Kadmon is headquartered in this district.  Moreover, Kadmon's common stock trades on the Nasdaq Global Select Market, which is headquartered in this District, rendering venue in this District appropriate.

## THE PARTIES

8.      Plaintiff is, and has been at all times relevant hereto, a continuous stockholder of Kadmon.

9.      Defendant Kadmon is a Delaware corporation, with its principal executive offices located at 450 East 29th Street, New York, New York 10016.  Kadmon is a biopharmaceutical company that discovers, develops, and delivers transformative therapies for unmet medical needs. Kadmon's common stock trades on the Nasdaq Global Select Market under the ticker symbol "KDMN."

10.     Defendant Harlan W. Waksal ("Waksal") has been President and Chief Executive Officer ("CEO") of the Company since August 2014, and a director since 2013.

11.     Defendant Tasos G. Konidaris ("Konidaris") has been Chairman of the Board since 2019, and a director of the Company since February 2017.

12.     Defendant Eugene Bauer ("Bauer") has been a director of the Company since 2010.

13.     Defendant Cynthia Schwalm ("Schwalm") has been a director of the Company since January 2019.

14.     Defendant David E. Cohen ("Cohen") has been a director of the Company since February 2019.

15.     Defendant Nancy Miller-Rich ("Miller-Rich") has been a director of the Company since August 2020.

16.     Defendant Arthur Kirsch ("Kirsch") has been a director of the Company since 2019.

17.     Defendants identified in paragraphs 10-16 are referred to herein as the "Board" or the "Individual Defendants."

## OTHER RELEVANT ENTITIES

18.     Sanofi is a société anonyme, a form of limited liability company, organized under the laws of France.  Sanofi is a healthcare company engaging in the research, development, manufacture, and marketing of therapeutic solutions in the United States, Europe, and internationally.  It operates through three segments: Pharmaceuticals, Vaccines, and Consumer Healthcare.  Sanofi provides specialty care products, including human monoclonal antibodies; products for multiple sclerosis, neurology, other inflammatory diseases, immunology, rare diseases, oncology, and rare blood disorders; medicines for diabetes; and cardiovascular and established prescription products.  It also supplies poliomyelitis, pertussis, and hib pediatric vaccines; and influenza, adult booster, meningitis, and travel and endemic vaccines.  Sanofi's common stock trades on the Nasdaq Global Select Market under the ticker symbol "SNY."

19.     Merger Sub is a Delaware corporation and wholly owned indirect subsidiary of Sanofi.

## SUBSTANTIVE ALLEGATIONS

**Background of the Company**

20.     Kadmon is a biopharmaceutical company that discovers, develops, and commercializes small molecules and biologics primarily for the treatment of inflammatory and fibrotic diseases.   Its lead product candidates include Belumosudil (KD025), an orally administered selective inhibitor of the rho-associated coiled-coil kinase 2 (ROCK2), which is in Phase II clinical trial for the treatment of chronic graft-versus-host, as well as systemic sclerosis, an autoimmune disease characterized by chronic inflammation, fibrosis, and vascular damage; KD045, an oral inhibitor of ROCK for the treatment of fibrotic diseases; and KD033, an anti-PD-L1/IL-15 fusion protein for the treatment of cancer.   The Company also engages in developing Tesevatinib to treat autosomal dominant polycystic kidney disease; and CLOVIQUE, a trientine hydrochloride capsules for the treatment of Wilson's disease.   Kadmon has strategic collaborations and license agreements with Nano Terra, Inc., and Dyax Corp.

21.     On August 5, 2021, the Company announced its second quarter 2021 financial results and business developments.   On July 16, 2021, the U.S. Food and Drug Administration ("FDA") approved REZUROCK (belumosudil) for the treatment of adult and pediatric patients 12 years and older with chronic graft-versus-host disease (cGVHD) after failure of at least two prior lines of systemic therapy.   Commercial launch activities are underway, with a focus on generating awareness of REZUROCK's differentiated clinical value and facilitating market access.   Kadmon launched Kadmon ASSIST, a comprehensive suite of patient financial and hub support services, including dedicated nurse practitioners on call to facilitate patient education and a successful clinical experience.   Kadmon announced on August 4, 2021, that the National Comprehensive Cancer Network added REZUROCK tablets to its Clinical Practice Guidelines in Oncology for Hematopoietic Cell Transplantation in the Pre-Transplant Recipient Evaluation and Management

of Graft-Versus-Host Disease in the United States.  On June 30, 2021, the Company's cash, cash

equivalents and marketable debt securities totaled $270.5 million, compared to $123.9 million at

December 31, 2020.  Reflecting on the results and looking to the future, defendant Waksal stated:

> The recent U.S. FDA approval of REZUROCK marked a transformative event for Kadmon and for patients living with cGVHD. REZUROCK represents a paradigm shift in the cGVHD treatment landscape by uniquely addressing both the immune and fibrotic components of the disease.  We look forward to bringing this meaningful new therapy to patients in the U.S. by the end of this month.

> Our momentum continues as we advance our portfolio of product candidates. Initial data from our open-label, Phase 2 trial of belumosudil for the treatment of systemic sclerosis is anticipated by year-end 2021.  The recent positive initial safety data presented at ASCO on KD033, our anti-PD-L1/IL-15 fusion protein, supports our confidence in the therapeutic potential of IL-15 for cancer.  We look forward to sharing additional clinical data from this trial in the fourth quarter of 2021.

**The Proposed Transaction**

22.     On September 8, 2021, Kadmon and Sanofi issued a joint press release announcing

the Proposed Transaction, which states, in relevant part:

> PARIS and NEW YORK – September 8, 2021 – Sanofi has entered into a definitive merger agreement with Kadmon Holdings, Inc. (NASDAQ: KDMN) a biopharmaceutical company that discovers, develops, and markets transformative therapies for disease areas of significant unmet medical needs.  The acquisition supports Sanofi's strategy to continue to grow its General Medicines core assets and will immediately add Rezurock™(belumosudil) to its transplant portfolio. Rezurock is a recently FDA-approved, first-in-class treatment for chronic graft-versus-host disease (cGVHD) for adult and pediatric patients 12 years and older who have failed at least two prior lines of systemic therap.

> Shareholders of Kadmon common stock will receive $9.50 per share in cash, which represents a total equity value of approximately $1.9 billion (on a fully diluted basis). The Sanofi and Kadmon Boards of Directors unanimously approved the transaction.

> "We are transforming and simplifying our General Medicines business and have shifted our focus on differentiated core assets in key markets," said Olivier Charmeil, Executive Vice President General Medicines.  "We are thrilled to add Kadmon's Rezurock to our well-established transplant portfolio.  Our existing scale, expertise, and relationships in transplant create an ideal platform to achieve the full

potential of Rezurock, which will address the significant unmet medical needs of patients with chronic graft-versus-host disease around the world."

"We are excited that Sanofi has acknowledged the value of Rezurock and the deep potential of our pipeline," said Harlan Waksal, M.D., President and Chief Executive Officer, Kadmon.  "By leveraging Sanofi's global resources and long-standing expertise in developing and commercializing innovative medicines, Rezurock is now well positioned for global accessibility, faster.  I want to thank the entire Kadmon team, including management and the Board of Directors, and the Sanofi organization, for their ongoing commitment to patients and their caregivers."

Sanofi's transplant business mainly consists of Thymoglobulin® (anti-thymocyte globulin), a polyclonal, anti-human thymocyte antibody preparation that acts as a broad immunosuppressive and immunomodulating agent and Mozobil® (plerixafor), a hematopoietic stem cell mobilizer.  Both products are among General Medicines core assets and are currently registered and marketed in more than 65 countries.

In July 2021, the FDA approved Rezurock for the treatment of adult and pediatric patients 12 years and older with cGVHD after the failure of at least two prior lines of systemic therapy. Rezurock was launched in August in the United States.  It is the first and only approved small molecule therapy that inhibits the Rho-associated coiled-coil kinase 2 (ROCK2), a signaling pathway that modulates inflammatory response and fibrotic processes.  Sanofi will work closely with regulatory authorities across different geographies to ensure that patients suffering from cGVHD can benefit from belumosudil treatment as early as possible.  Kadmon is also developing Rezurock for the treatment of diffuse cutaneous systemic sclerosis, with an open-label Phase 2 clinical trial currently ongoing.

Kadmon's pipeline includes drug candidates for immune and fibrotic diseases as well as immuno-oncology therapies.

The transaction is expected to be modestly dilutive to Sanofi's EPS in 2022.

**Transaction Terms**

Under the terms of the merger agreement, holders of Kadmon's common stock will receive $9.50 per share in an all-cash transaction, reflecting a total equity value of Kadmon of approximately $1.9 billion.  The offer price represents a premium of 79% over the closing price on September 7, 2021 and a premium of approximately 113% over the 60 trading days volume weighted average price.

The consummation of the transaction is subject to customary closing conditions, including the approval of holders of a majority of the outstanding shares of Kadmon voting stock, the expiration or termination of the waiting period under the Hart-Scott-Rodino Antitrust Improvements Act of 1976, and other customary conditions.

Following the successful completion of the merger, a wholly owned subsidiary of Sanofi will merge with Kadmon and the outstanding Kadmon shares will receive $9.50 per share in cash.  Sanofi plans to fund the transaction with available cash resources.  Subject to the satisfaction or waiver of customary closing conditions, Sanofi expects to complete the acquisition in the fourth quarter of 2021.

Weil, Gotshal & Manges LLP is acting as legal counsel to Sanofi.  Cantor Fitzgerald & Co. and Moelis & Company LLC are acting as exclusive financial advisors to Kadmon in the transaction, while DLA Piper LLP (US) is acting as legal counsel.

## Insiders' Interests in the Proposed Transaction

23.     Kadmon insiders are the primary beneficiaries of the Proposed Transaction, not the Company's public stockholders.  The Board and the Company's executive officers are conflicted because they will have secured unique benefits for themselves from the Proposed Transaction not available to Plaintiff and the public stockholders of Kadmon.

24.     Notably, Kadmon insiders stand to reap substantial financial benefits for securing the deal with Sanofi.  Pursuant to the Merger Agreement, certain outstanding Company options, stock appreciation rights granted under the Company's 2016 Plan ("Company SARs"), and equity appreciation rights granted under the Kadmon Holdings, LLC 2014 Long-Term Incentive Plan ("Company EARs") will vest and convert into the right to receive cash payments.  The following table summarizes the cash payments that Company insiders stand to receive for their Company options, SARs and EARs:

| Name | Shares (#)[1] | Shares ($) | Options (#)[2] | Options ($) | Company SARs (#)[3] | Company SARs ($) | Company EARs (#) [4] | Company EARS ($) | Total ($) |
|---|---|---|---|---|---|---|---|---|---|
| Harlan W. Waksal, M.D. | 177,945 | $1,690,478 | 6,732,652 | $23,647,300 | 655,000 | $3,838,300 | 750 | $1,337,713 | $30,513,791 |
| Eugene Bauer, M.D. | 6,716 | $ 63,802 | 347,395 | $ 2,028,507 | — | $ — | — | $ — | $ 2,092,309 |
| David E. Cohen, M.D. | — | $ — | 346,944 | $ 2,194,844 | — | $ — | — | $ — | $ 2,194,844 |
| Arthur Kirsch | 30,000 | $ 285,000 | 346,112 | $ 2,187,547 | — | $ — | — | $ — | $ 2,472,547 |
| Tasos Konidaris | — | $ — | 418,410 | $ 2,502,733 | — | $ — | — | $ — | $ 2,502,733 |
| Nancy Miller-Rich | — | $ — | 133,339 | $ 767,912 | — | $ — | — | $ — | $ 767,912 |
| Cynthia Schwalm | 31,000 | $ 294,500 | 346,944 | $ 2,194,844 | — | $ — | — | $ — | $ 2,489,344 |
| Steven Meehan | 24,909 | $ 236,636 | 1,970,000 | $11,451,050 | — | $ — | — | $ — | $11,687,686 |
| Gregory S. Moss | 17,671 | $ 167,875 | 1,660,566 | $ 9,602,050 | — | $ — | 200 | $ 356,724 | $10,126,648 |
| John Ryan | — | $ — | 598,078 | $ 3,200,000 | — | $ — | 250 | $ 445,904 | $ 3,645,904 |

25.     Moreover, in connection with the approval of the Merger Agreement, Kadmon has approved certain amendments to its employment agreements ("Employment Agreements") with each of Kadmon executive officers, defendant Waksal, Steven Meehan, and Gregory S. Moss.  The Employment Agreements, as amended, provide for the payment of retention bonuses in the amount of $3,500,000 to defendant Waksal, $1,000,000 to Mr. Meehan and $1,000,000 to Mr. Moss (the "Retention Bonuses").  25% of the Retention Bonuses were paid on the date the Merger Agreement was fully executed and the remaining 75% will be earned on the closing date of the merger.

**The Proxy Statement Contains Material Misstatements and Omissions**

26.     The defendants filed a materially incomplete and misleading Proxy Statement with the SEC and disseminated it to Kadmon's stockholders.  The Proxy Statement misrepresents or omits material information that is necessary for the Company's stockholders to make an informed decision whether to vote their shares in favor of the Proposed Transaction or seek appraisal.

27.     Specifically, as set forth below, the Proxy Statement fails to provide Company stockholders with material information or provides them with materially misleading information concerning: (i) the data and inputs underlying the financial valuation analyses performed by the Company's financial advisors, Cantor and Moelis; and (ii) Company insiders' potential conflicts

of interest.  Accordingly, Kadmon stockholders are being asked to vote in favor of the Proposed

Transaction or seek appraisal without all material information at their disposal.

***Material Omissions Concerning Cantor's and Moelis's Financial Analyses***

28.     The Proxy Statement fails to disclose material information concerning the financial

analyses performed by the Company's financial advisors, Cantor and Moelis.

29.     The Proxy Statement describes Cantor's and Moelis's fairness opinions and the

various valuation analyses performed in support of their opinions.  However, the description of

Cantor's and Moelis's fairness opinions and analyses fails to include key inputs and assumptions

underlying these analyses.  Without this information, as described below, Kadmon's public

stockholders are unable to fully understand these analyses and, thus, are unable to determine what

weight, if any, to place on Cantor's and Moelis's fairness opinions in determining whether to vote

in favor of the Proposed Transaction or seek appraisal.  This omitted information, if disclosed,

would significantly alter the total mix of information available to Kadmon's stockholders.

30.     With respect to Cantor's *Discounted Cash Flow Analysis*, the Proxy Statement fails

to disclose: (i) quantification of the inputs and assumptions underlying the discount rates ranging

from 9.5% to 11.5%; (ii) Cantor's basis for assuming the Company's after-tax unlevered free cash

flows would decline in perpetuity after December 31, 2034, at a rate of 60% to 10% year-over-

year; (iii) quantification of the Company's estimated cash, debt, convertible preferred stock and

other liabilities; and (iv) the number of fully-diluted shares of Company common stock used in the

analysis.

31.     With respect to Moelis's *Discounted Cash Flow Analysis*, the Proxy Statement

fails to disclose: (i) quantification of the Company's federal and state net operating losses and

federal research and development tax credits; (ii) the Company's estimated December 31, 2021,

cash balance (net of debt); (iii) quantification of the Company's terminal year after-tax unlevered free cash flow used to derive the terminal values for the Company; (iv) quantification of the terminal values for the Company; and (v) quantification of the inputs and assumptions underlying the discount rates ranging from 8.25% to 10.75%.

32.     With respect to Moelis's review of one-year forward stock price targets for the Company, the Proxy Statement fails to disclose: (i) the individual price targets observed; and (ii) the sources thereof.

33.     With respect to Moelis's analysis of premiums paid, the Proxy Statement fails to disclose: (i) the identities of the acquisitions observed; and (ii) the individual premiums for each of the acquisitions.

34.     The omission of this information renders the statements in the "Opinions of the Company Financial Advisors" section of the Proxy Statement false and/or materially misleading in contravention of the Exchange Act.

***Material Omissions Concerning Company Insiders' Potential Conflicts of Interest***

35.     The Proxy Statement fails to disclose material information concerning the potential conflicts of interest faced by Kadmon insiders.

36.     The Proxy Statement fails to disclose the details of all employment and retention-related discussions and negotiations that occurred between Sanofi and Kadmon's executive officers, including who participated in all such communications, when they occurred and their content.  The Proxy Statement further fails to disclose whether any of Parent's proposals or indications of interest mentioned management retention in the combined company following the Proposed Transaction or the purchase of or participation in the equity of the surviving corporation.

37.     Communications regarding post-transaction employment and merger-related benefits during the negotiation of the underlying transaction must be disclosed to shareholders. This information is necessary for shareholders to understand potential conflicts of interest of management and the Board, as that information provides illumination concerning motivations that would prevent fiduciaries from acting solely in the best interests of the Company's stockholders.

38.     The omission of this information renders the statements in the "Background of the Merger" and "Interests of Directors and Executive Officers in the Merger" sections of the Proxy Statement false and/or materially misleading in contravention of the Exchange Act.

39.     The Individual Defendants were aware of their duty to disclose the above-referenced omitted information and acted negligently (if not deliberately) in failing to include this information in the Proxy Statement.  Absent disclosure of the foregoing material information prior to the stockholder vote on the Proposed Transaction, Plaintiff and the other stockholders of Kadmon will be unable to make a sufficiently informed voting or appraisal decision in connection with the Proposed Transaction and are thus threatened with irreparable harm warranting the injunctive relief sought herein.

## CLAIMS FOR RELIEF

### COUNT I

**Claims Against All Defendants for Violations of Section 14(a) of the
Exchange Act and Rule 14a-9 Promulgated Thereunder**

40.     Plaintiff repeats all previous allegations as if set forth in full.

41.     During the relevant period, defendants disseminated the false and misleading Proxy Statement specified above, which failed to disclose material facts necessary to make the statements, in light of the circumstances under which they were made, not misleading in violation of Section 14(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder.

42.     By virtue of their positions within the Company, the defendants were aware of this information and of their duty to disclose this information in the Proxy Statement.  The Proxy Statement was prepared, reviewed, and/or disseminated by the defendants.  It misrepresented and/or omitted material facts, including material information about Cantor's and Moelis's financial analyses and Company insiders' potential conflicts of interest.  The defendants were at least negligent in filing the Proxy Statement with these materially false and misleading statements.

43.     The omissions and false and misleading statements in the Proxy Statement are material in that a reasonable stockholder would consider them important in deciding how to vote on the Proposed Transaction.

44.     By reason of the foregoing, the defendants have violated Section 14(a) of the Exchange Act and SEC Rule 14a-9(a) promulgated thereunder.

45.     Because of the false and misleading statements in the Proxy Statement, Plaintiff is threatened with irreparable harm, rendering money damages inadequate.  Therefore, injunctive relief is appropriate to ensure defendants' misconduct is corrected.

## COUNT II

### Claims Against the Individual Defendants for Violations
### of Section 20(a) of the Exchange Act

46.     Plaintiff repeats all previous allegations as if set forth in full.

47.     The Individual Defendants acted as controlling persons of Kadmon within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their positions as officers and/or directors of Kadmon, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy Statement filed with the SEC, they had the power to influence and control and did influence and control,

directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading.

48.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

49.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.  The Proxy Statement at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction.  They were, thus, directly involved in the making of the Proxy Statement.

50.     In addition, as the Proxy Statement sets forth at length, and as described herein, the Individual Defendants were each involved in negotiating, reviewing, and approving the Proposed Transaction.  The Proxy Statement purports to describe the various issues and information that they reviewed and considered—descriptions the Company directors had input into.

51.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

52.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and SEC Rule 14a-9, promulgated thereunder, by their acts and omissions as alleged herein.  By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the

Exchange Act.  As a direct and proximate result of defendants' conduct, Kadmon stockholders will be irreparably harmed.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment and preliminary and permanent relief, including injunctive relief, in h[ ] favor on behalf of Kadmon, and against defendants, as follows:

A.      Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction and any vote on the Proposed Transaction, unless and until defendants disclose and disseminate the material information identified above to Kadmon stockholders;

B.      In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

C.      Declaring that defendants violated Sections 14(a) and/or 20(a) of the Exchange Act, as well as SEC Rule 14a-9 promulgated thereunder;

D.      Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

E.      Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

Dated:  October 19, 2021                    **WEISSLAW LLP**


By _____
    Richard A. Acocelli
    305 Broadway, 7th Floor
    New York, NY 10007
    Tel: (212) 682-3025
    Fax: (212) 682-3010
    Email: racocelli@weisslawllp.com

    *Attorneys for Plaintiff*